*1137 OPINION.
James:
The computation of the foregoing deficiency should be corrected in accordance with the decision of the Board in the Appeal of L. S. Ayers & Co., 1 B. T. A. 1135, in respect of both of the years under consideration.
Upon the taxpayer’s claim that consolidation of three companies should be had, namely, Canton Bridge Co. of West Virginia and the Central Concrete Construction Co., we are of the opinion that the companies were affiliated since the stock was owned by the same parties, but there is no evidence to show that there was any invested capital attributable to the companies, but, on the contrary, the evidence shows that all the assets of the West Virginia company were taken over by the New Jersey company at the time the mortgage was given and all the investment therein distributed, and there is no evidence that any invested capital was ever paid in to the Central Concrete Construction Co. It further appears that the entire surplus of these companies, if any, was included in the computations of invested capital, since no separate books were kept for these companies during, or for many years prior to, the taxable years.
The main issue before the Board is whether the assets paid in on the organization of the taxpayer for $250,000 of bonds actually issued by the taxpayer in 1906 shall be treated as invested capital notwithstanding the fact that the bonds were outstanding of record throughout the period here in question. The taxpayer contends that they never had any valid existence from the beginning, that they were a fraud upon contingent judgment creditors when issued and were subject to be set aside by those creditors had the original suits in Ohio ripened into valid and enforceable judgments. With the legal principle advanced by the taxpayer we are quite in agreement, but we can not concede that it has the effect for which it contends. As to all the world except judgment creditors under the suits pending at the time these bonds were issued, they were a valid obligation solemnly entered into, and every step was taken which possibly could be taken to establish their validity. The mortgage was at all times of record and notice to the world of the existence of the obligation, but the conduct of the Congers at all times subsequent to the conclusion of the litigation in Ohio was such as conclusively to negative the existence in fact of these bonds as an obligation of the taxpayer. Ho interest was over paid or accrued upon them. They were *1138 ignored in bank statements. They were ignored in returns for capital stock tax purposes. They were recognized only in the Laiblin contract and then only as a convenient means of dividing the security for the payments which he agreed to make. They were held at all times by the stockholders of the taxpayer in the proportions of their stock holdings. When Laiblin made his contract of purchase he delivered to the Congers notes' bearing 6 per cent interest permitting the retention by them of the bonds as collateral. He paid interest on the notes. If the bonds had been regarded in any sense as an outstanding obligation of the taxpayer, the manner of handling this transaction would have been for the Congers to have collected the interest from the bonds and to have surrendered them to Laiblin pro rata as he made his payments and the contract naturally would have been drawn to provide for the purchase of the bonds in blocks of $25,000 and their surrender to him as purchased. Moreover, Laib-lin’s simultaneous contract with the other employees and his later contract with two of them whereby he sold all of his stock are wholly inconsistent with the view that these bonds then constituted a valid and existing obligation of the taxpayer. He sold the stock at a price representing the then estimated net worth, ignoring the bonds, and he merely agreed in one contract to secure their cancellation and altogether omitted in the other to mention them, although at that time they had not been canceled nor the mortgage satisfied.
It is quite clear from all the evidence that the Congers and all others connected with this enterprise regarded their invested capital from the organization of the taxpayer as $250,000 in substance, and that the purported debt represented by the bond and mortgage was nothing more than a fiction which they omitted to cancel because it made no difference to any of them. So little heed was paid to it that when Laiblin had completed all his payments or was prepared to complete his payments on account of his purchase of the business, the Congers were unable to locate all of the bonds. The Congers were, as the evidence shows', men of substance and of business experience, who would not be expected to treat valuable papers as the evidence shows the bonds were treated in this case. Nearly $200,000 of face value in one instance were delivered in a satchel to the trustee under the mortgage with no instructions as to their disposition and were thrown carelessly into an unused vault. The remainder were scattered through the offices of the Congers and were discovered only after a prolonged search. We are of the opinion that, whatever validity the bonds had upon execution and issue, and whatever validity may be attached to the original execution of the mortgage and deed of trust, it was the intent of the Congers at all times after 1907 to treat the assets secured by the bonds and the mortgage as in fact contributed to the invested capital of the taxpayer. As such. *1139 and being in the hands of the sole stockholders, the assets purporting to be subject to these obligations constituted a paid-in surplus of the taxpayer and the obligations did not represent borrowed capital.
Significant of this intention is the surrender and cancellation of four of the bonds in 1908, when it was necessary to secure the release from the mortgage of a small piece of property sold by the taxpayer. Four bonds were delivered up to the trustee for cancellation, although the sale price of the property in question was only $3,500 and the $3,500 was actually paid to and retained by the taxpayer, no part of it being paid to the Congers in consideration of the release of the mortgage. This does not comport with the ordinary position of bondholders or mortgagees in connection with the release of any portion of their security in connection with a partial sale thereof by the mortgagor.
The deficiency should be redetermined in accordance with the foregoing.